{¶ 1} Robert E. Wittbrot appeals from a judgment of the Clark County Court of Common Pleas, which granted summary judgment in favor of his former attorney, Joseph Juergens, on a legal malpractice claim.
 {¶ 2} Wittbrot's legal malpractice claim arose out of a domestic relations dispute. In 2000, Wittbrot's former wife asked the trial court to assume jurisdiction from a Wisconsin court over a domestic relations matter. Both parties were living in Ohio at the time, and Wittbrot did not object to the Ohio court's assumption of jurisdiction. Wittbrot's former wife also asked the court to calculate a child support arrearage based on the Wisconsin orders, to find Wittbrot in contempt of the Wisconsin orders, and to order new support obligations. Juergens represented Wittbrot in this matter.
 {¶ 3} In November 2000, the magistrate conducted a hearing, assumed jurisdiction over the case, and issued a variety of orders. These orders included finding Wittbrot in contempt for failure to pay $5,592 in back child support under the Wisconsin order, finding him in contempt for failure to pay $1,500 in attorneys fees awarded by the Wisconsin court, and issuing new child support orders, which included payment on the arrearage. In doing so, the magistrate imputed income to Wittbrot in the amount of $74,000 per year based on his education, qualifications, and work experience, and ordered him to seek work. At the time, Wittbrot was attempting to start his own insurance agency after working for, and resigning from, an insurance company after several demotions.
 {¶ 4} Juergens filed objections to the magistrate's decision on Wittbrot's behalf. In response to the objections, in December 2000, the trial court modified the magistrate's decision in several respects. It left the imputation of income intact, however, and calculated support obligations accordingly. Wittbrot was subsequently found in contempt for failing to comply with the December 2000 orders. Juergens represented Wittbrot in the contempt proceedings. Although given the opportunity to purge the contempt, Wittbrott failed to do so and was incarcerated for approximately two weeks. Wittbrot subsequently terminated Juergens's services.
 {¶ 5} In February 2002, Wittbrot filed an appeal from the trial court's December 2000 judgment, which was deemed to be timely because of the clerk's apparent failure to comply with service requirements. On November 8, 2002, we reversed the trial court's December 2000 judgment on the basis that the court had not considered all of the factors set forth in R.C. 3113.215(A)(5) in imputing income to Wittbrot, and we remanded for further proceedings. We affirmed the trial court's conclusion that Wittbrot was voluntarily underemployed. Wittbrot v.Wittbrot, Clark App. No. 2002 CA 198, 2002-Ohio-6075.
 {¶ 6} In June 2002, Wittbrot filed a complaint for legal malpractice against Juergens. In January 2004, Juergens filed a motion for summary judgment. In February 2006, the trial court granted Juergens's motion for summary judgment.
 {¶ 7} Wittbrot appeals, raising one assignment of error with numerous subparts, all of which allege that Juergens's representation was inadequate.
 {¶ 8} To establish a cause of action for legal malpractice, one must show that (1) the attorney owed a duty or obligation to the plaintiff, (2) there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) there is a causal connection between the conduct complained of and the resulting damage or loss. Vahila v. Hall, 77 Ohio St.3d 421, 427, 1997-Ohio-259,674 N.E.2d 1164. The attorney's duty is to "exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent[.]" Palmer v. Westmeyer (1988),48 Ohio App.3d 296, 298, 549 N.E.2d 1202.
 {¶ 9} Summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); State ex rel. Grady v. State Emp. RelationsBd., 78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims."Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E).
 {¶ 10} Wittbrot claims that summary judgment was inappropriate for several reasons. First, Wittbrot argues that Juergens failed to prepare himself or his client — Wittbrot — for the hearing before the magistrate on October 19, 2000, at which Wittbrot's earning potential was a central focus. In support of this argument, he apparently relies on an affidavit from attorney Richard A. Rabb, who stated that Juergens "failed to present an adequate defense" at the hearing before the magistrate. Rabb further stated that "[t]estimony from an expert, such as an economist or management recruiter[,] would have bolstered Mr. Wittbrot's defense thereby avoiding the finding of contempt" for non-payment of the Wisconsin orders. Juergens claims that Rabb's affidavit was conclusory and was therefore insufficient to create a genuine issue of material fact.
 {¶ 11} The fact that Juergens could have presented additional evidence on Wittbrot's behalf, as Rabb asserts, was insufficient to create a genuine issue of material fact that Juergens engaged in malpractice. Juergens could have reasonably concluded that expert testimony was not required, especially in light of his client's financial straits. Moreover, a large arrearage already existed at that time. Expert testimony regarding Wittbrot's earning potential and the like would have only affected orders for future support and would not have eliminated his arrearage or prevented the subsequent finding of contempt for non-payment of the arrearage. The transcript supports the conclusion that Juergens presented detailed information at the hearing about Wittbrot's financial condition, about the employment missteps and challenges that had befallen him, and about Wittbrot's reasons for taking his career in a different direction. In light of this evidence, we agree with Juergens that Rabb's affidavit was not sufficiently tied to the facts of this case and did not sufficiently address what the standard of care allegedly required so as to create a genuine issue of material fact that Juergens's representation failed to conform to the standard required by law.
 {¶ 12} With respect to how much time Juergens spent preparing for the hearing, Wittbrot relied upon his own affidavits and Rabb's affidavit. However, none of these affidavits addresses this issue specifically. Although Wittbrot claims in his brief that Juergens refused to meet with him the day before the hearing, this allegation was not included in his affidavit. Juergens's affidavit, on the other hand, asserted that he was contacted by Wittbrot only days before the original hearing date. Juergens obtained a continuance of approximately two weeks and communicated with Wittbrot about his defense during that time. According to Juergens, Wittbrot declined to meet with him the day before the hearing, preferring to meet the day of the hearing. Juergens mounted a vigorous defense and presented evidence to the court of Wittbrot's strained financial condition. Viewed in light of Juergen's affidavit, the hearing transcript, and the magistrate's findings, the affidavits relied upon by Wittbrot did not create a genuine issue of material fact as to whether the amount of time spent by Juergens in preparation for the hearing was adequate.
 {¶ 13} Second, Wittbrot contends that Juergens settled a dispute over child support without his knowledge and contrary to his interests, which constituted malpractice per se. The record does not support this contention. The trial court's entry indicates that Wittbrot's former wife agreed not to oppose his objection to the portion of the magistrate's decision ordering him to seek work so long as the imputation of income was unaffected by the change. Wittbrot nonetheless argued — unsuccessfully — against the imputation of income. All of the essential terms of the child support obligation were determined by the magistrate and the trial court, not by the parties. There was no evidence of a secret agreement, and there was certainly no basis to conclude that Wittbrot was prejudiced by his wife's decision not to oppose some of his objections.
 {¶ 14} Third, Wittbrot claims that Juergens failed to file a transcript of the magistrate's hearing with the objections in order to conceal the aforementioned "unauthorized settlement." Again, the record belies this assertion. Although the original transcript apparently cannot be located, the docket indicates that Juergens requested the transcript and that the court reporter filed an invoice for the transcript. More importantly, the trial court judge filed an affidavit stating that he had "received and reviewed the transcript of the proceedings from the October 19, 2000 hearing" prior to ruling on the objections. Because the record contains ample evidence that the transcript was before the trial court when Wittbrot's objections were considered, Wittbrot has not created a genuine issue of material fact that Jeurgens did not order the transcript in order to conceal his alleged wrongdoing.
 {¶ 15} Fourth, Wittbrot asserts that Juergens failed to represent him at a hearing on his objections to the magistrate's report and recommendation. He questions the truth of Juergens's contention that Juergens attended a hearing on December 18, 2000 at which he made arguments on Wittbrot's behalf. Wittbrot claims that the hearing never happened. What the evidence actually established, however, was that the meeting on December 18, 2000, was not transcribed. Juergens's deposition testimony and the judge's affidavit indicate that they discussed the objections in chambers, but that there was not a "hearing" in the formal sense, with transcription. This evidence is not inconsistent with the court reporter's indication to Wittbrot in a voice mail message that there was no "hearing" on December 18, upon which he relies in advancing this argument.
 {¶ 16} Wittbrot has presented no evidence that he was prejudiced by the use of an in chambers discussion rather than a formal hearing to present his objections. Three of Wittbrot's five objections were sustained. The success of these objections permitted Wittbrot to pay child support on a monthly basis, rather than weekly, and to pay by personal check, rather than certified check. The court also modified the magistrate's order such that Wittbrot was no longer required to seek work. Juergens did not fall below the standard of reasonable representation in handling the objections in this way.
 {¶ 17} Fifth, Wittbrot claims that Juergens failed to object to the imputation of income in order to hide his malpractice and to protect the alleged unauthorized settlement he had made with Wittbrot's wife. As discussed above, there is simply no evidence of a secret settlement. Moreover, it is apparent from the trial court's ruling on the objections that Juergens did, in fact, challenge the imputation of income. The judgment states:
 {¶ 18} "The first Objection enumerated on behalf of the Defendant herein concerns the imputation of income upon the Defendant herein which was utilized by the Magistrate in her Decision filed November 8, 2000.
 {¶ 19} "Upon independent review of the transcript of the proceedings which took place before the Magistrate * * * and further upon review of paragraph 7 and 8 of the Magistrate's Decision * * *, the Court finds that the Magistrate was provided with ample, credible and competent evidence going to each and every essential element concerning the issue of imputation of income and * * * the Magistrate properly determined the Defendant's potential income based upon the credible evidence submitted to her and imputed the same to the Defendant, pursuant to law."
 {¶ 20} Wittbrot's argument that Juergens did not object to the imputation of income in order to conceal wrongdoing on his part clearly lacks merit.
 {¶ 21} Finally, Wittbrot asserts that Juergens failed to advise him of his right to appeal from the trial court's judgment. Contradictory evidence was offered on this point. Wittbrot averred that he was never told of a right to appeal any judgment of the trial court. Juergens's affidavit stated that he faxed a copy of the trial court's judgment to Wittbrot on January 4, 2001, eight days after it was issued, and he attached a time-stamped fascimile transmission sheet. Juergens also stated by affidavit that he had talked with Wittbrot by phone about Wittbrot's appeal rights and the cost of hiring Juergens to represent him in an appeal. Juergens's affidavit indicates that Wittbrot decided not to file an appeal. Notwithstanding the contradictory evidence on this point, Wittbrot filed a timely notice of appeal on February 20, 2002. Wittbrot v. Wittbrot, 2002-Ohio-6075, ¶ 18. As such, even if Wittbrott could establish that he did not receive notice of the judgment from his attorney, it is undisputed that he had a full opportunity to pursue an appeal.
 {¶ 22} Wittbrot further argues, however, that if he had received notice of his right to appeal from the judgment more promptly, he could have filed an appeal sooner, which would have enabled him to avoid bankruptcy and a contempt finding. Juergens asserts that Wittbrot was in financial straits prior to Juergens's involvement in the case and that his bankruptcy and the contempt finding were inevitable regardless of the timing of the appeal.
 {¶ 23} As we discussed above, Wittbrot was found to be in contempt for failure to pay child support, arrearages, and attorney fees only four months after the trial court issued its judgment. The arrearage was based primarily on the Wisconsin judgment that predated Juergens's involvement in the case. Thus, there is no genuine issue of material fact that the more prompt filing of an appeal would have prevented this finding of contempt.
 {¶ 24} On the issue on bankruptcy, however, Wittbrot also asserts that he was prejudiced by the delay in filing the appeal because the imputation of income, which was reversed and remanded on appeal, led to a rapid accumulation of arrearage subsequent to the trial court's judgment that forced him into bankruptcy. His bankruptcy attorney stated by affidavit that a $22,000 child support arrearage that accumulated as a result of the Ohio support order was a substantial debt that required Wittbrot to seek relief in bankruptcy. Because there is conflicting evidence about whether Juergens promptly informed Wittbrot of his right to appeal the December 2000 judgment, a genuine issue of material fact exists as to whether Juergens' representation fell below the standard of care, causing significant financial hardship to Wittbrot. Thus, on this issue, summary judgment was inappropriate, and Wittbrot's assignment of error is sustained. In all other respects, his assignment of error is overruled.
 {¶ 25} The judgment of the trial court will be affirmed in part and reversed in part, and this matter will be remanded for further proceedings.
GRADY, P.J. and FAIN, J., concur.